CHRIS LUCAS *vs.* SOUTH NORWALK TRUST COMPANY.

HINMAN, BANKS, AVERY, BROWN and JENNINGS, Js.

Argued January 7th—decided March 4th, 1936.

*Robert H. Gould* and *Cramer C. Hegeman,* for the appellant (plaintiff).

*Frederick Lovejoy,* for the appellee (defendant).

JENNINGS, J. This action was brought in two counts. The first count alleged breach of contract in the failure of the defendant to hold certain checks for the plaintiff deposited with the defendant as the agent of the plaintiff. The second count claimed damages for alleged fraudulent misrepresentations made by the defendant to the plaintiff with reference to the same transaction. There was a general verdict for the plain-

tiff with answers to interrogatories. This the court set aside as against the evidence.

The assignments of error fall into two classes: Claimed error (1) in omitting from the finding facts claimed to have been proven by the plaintiff and in including facts in the finding not based on evidence; (2) in granting the motion to set aside the verdict.

The only purpose of a finding in this case is to test the propriety of a remark made in argument by one of the plaintiff's counsel to the effect that "we are now paying for bankers' mistakes." This, when considered in the setting portrayed by the portion of the finding providing such setting, even without the corrections sought by the appellant, did not exceed the permissible limits of argument. *Archambeault* v. *Jamelle,* 100 Conn. 690, 693, 124 Atl. 820. No objection was made at the time. *Lebas* v. *Patriotic Assurance Co.,* 106 Conn. 119, 122, 137 Atl. 241, and cases cited. The trial court in the charge emphatically admonished the jury to disregard it. The finding of facts which the plaintiff and defendant, respectively, offered evidence to prove and claimed to have proved would be appropriate only for the purpose of presenting and testing claimed errors in the charge. *Peterson* v. *Meehan,* 116 Conn. 150, 163 Atl. 757. As no such errors are assigned this portion of the finding was superfluous, but apparently was sought and included in the record through a misconception of the scope and effect of § 1663c of the General Statutes, Cum. Sup. 1935. It follows that there is no occasion to pass upon the assignments of error directed to the finding.

A careful review of the evidence discloses that the jury could reasonably have found the following facts: Chris Lucas and Gus Lucas were cousins and partners. Upon the dissolution of the partnership Gus owed Chris $2750 evidenced by his promissory note for that

sum. After the payment of $200 on the principal of this note while it was held by the defendant for collection, Chris and Gus became involved in litigation as to the manner of payment. As a result, Gus agreed to draw a check for $50 to the order of the plaintiff each month and have it certified by the defendant. This Gus did, starting November 1st, 1930, and on October 1st, 1933, thirty-six checks had been drawn. No checks were drawn after that date. In April, 1931, Chris authorized the defendant to accept and hold these checks for him and the defendant agreed to perform this service. About the first of each month, Chris inquired at the bank whether a check had been certified and whether it was there and was answered in the affirmative. At one time a number of checks were actually shown to him. Chris was a credible witness in the opinion of the two managing officers of the bank. In spite of this agreement and these assurances, the defendant did not hold the checks but without notice to or authorization from Chris cashed them for Gus. These facts are insufficient to prove fraud and if the verdict is to stand, it must be on the allegations of the first count.

The court made a careful analysis of the testimony and came to the conclusion that that offered by the defendant was so cogent as to remove the questions at issue, "out of the realm of belief or disbelief" and the verdict was therefore set aside. In the memorandum of decision on this motion ten reasons are given for this action. The first reason refers to the claim of the defendant, of which there was substantial proof, that the checks were in fact not left with the defendant to accumulate but were taken from the defendant by Gus as certified. The breach of the agreement would exist even if this was the situation.

The third reason is principally concerned with the

authority of the tellers to bind the bank. The first contact with the bank in this connection was when it held the note for collection. It was then in the possession of Wardell, the note teller, and payments were made to and credited by him. When the new arrangement was made, the plaintiff went to Wardell and instructed him to accept the payments and hold them for him. Wardell agreed to do this "the same as I did before." Similar arrangements were made with the other tellers and continued over a period of many months. While the making of agreements of this kind is not ordinarily within the scope of a teller's authority, 1 Morse, Banks & Banking (6th Ed.) p. 493, the consistent course of conduct continued over so long a period of time may be sufficient to bind the principal on the general principles of agency. The record indicates that this question was left to the jury as one of fact. Their decision based on the evidence outlined is final. Op. Cit., § 9, note 18, p. 31. *Irving* v. *Shethar,* 71 Conn. 434, 441, 42 Atl. 258; *Carrier* v. *Donovan,* 88 Conn. 37, 41, 89 Atl. 894; *Bay State Milling Co.* v. *Susman, Feuer Co.,* 91 Conn. 482, 489, 100 Atl. 19; *Russo* v. *McAviney,* 96 Conn. 21, 24, 112 Atl. 657; *De Nezzo* v. *General Baking Co.,* 106 Conn. 396, 399, 138 Atl. 127; 1 Mechem, Agency (2d Ed.) § 246.

The ninth reason relates to the effect of the argument of the appellant's attorney. This question has already been discussed. The tenth reason relates to the second count. The verdict being general, if good on either count, it must stand. *Ziman* v. *Whitley,* 110 Conn. 108, 114, 147 Atl. 370; *Barbieri* v. *Pandiscio,* 116 Conn. 48, 53, 163 Atl. 469. The remaining reasons make a strong argument as to why the verdict should have been for the defendant, but fail to touch the heart of the plaintiff's contention. Reduced to even simpler form than the statement as to his claims of proof, it

is that the defendant agreed to certify, take and hold checks for the plaintiff, that it did certify and take checks but failed to hold them.

If the jury believed the plaintiff, and their verdict indicates that they did, it is hard to think of any precaution neglected by him. A person of somewhat limited business experience, he was dealing with a substantial bank. He naturally dealt with the men at the windows. He went around every month and inquired if a check was there for him and was told by a teller that there was. Gus Lucas admitted in testifying that he told Chris' attorney that he would leave certified checks with the defendant for him.

Five of the checks were in a different category from the remaining thirty-one. They were exhibits in court in the prior litigation above referred to and, as indicated by the trial judge, in the present case, there is no evidence that they were ever subsequently in the control of the defendant. Their sum, $250, should not have been included in the verdict. With this exception the verdict, based on the agreement and its breach, is supported by credible evidence and must stand in spite of the considered judgment of the trial court. *Waters* v. *Connecticut Co.*, 113 Conn. 768, 155 Atl. 59; *Glazer* v. *Rosoff*, 111 Conn. 707, 708, 151 Atl. 165.

There is error and a new trial is ordered unless the plaintiff within three weeks from the time when he receives notice of the decision of this court shall file in the office of the clerk of the Superior Court a remittitur of $266.55 of the amount of the verdict; but if such remittitur be filed judgment shall thereupon, as to the residue, be entered upon the verdict; the costs of this court to be taxed in either event for the appellant.

In this opinion the other judges concurred.